135 N.J. Super. 488 (1975)
343 A.2d 770
BARBETTA AGENCY, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EMIL SCIARAFFA, JR. AND MARIA SCIARAFFA, DEFENDANTS-APPELLANTS, AND JOHN V. DVORAK AND ANN DVORAK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1975.
Decided July 11, 1975.
*490 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. Michael D'Alessio, Jr. argued the cause for appellants (Messrs. Fielo & D'Alessio, attorneys; Mr. Michael K. Fielo on the brief).
*491 Mr. Francis M. Devito argued the cause for plaintiff-respondent (Messrs. Alongi & Devito, attorneys).
The opinion of the court was delivered by KOLOVSKY, P.J.A.D.
Defendants Dvorak were the owners of a tract of vacant land in Belleville, N.J. A writing dated December 10, 1970 (but apparently signed several days thereafter) was executed by the Dvoraks as sellers and defendants Sciaraffa as purchasers. By its terms the writing provided for the sale, for $69,000, of the land together with the sellers' rights under a building permit which permitted the construction of a multiple dwelling of 21 units in accordance with plans on file with the building inspector of the Town of Belleville.
It is undisputed that plaintiff was the real estate broker whose efforts resulted in the execution of the writing.
The sale was never consummated because despite the fact that the writing embodied an acknowledgement by the sellers that they had received, "upon execution of this contract," the deposit of $6900 called for by the writing  a deposit to be held in escrow by the sellers' attorney  that deposit was never made. By letter dated January 6, 1971 the sellers' attorney advised the purchasers' attorney that, because the $6900 had not been received, "we deem the contract never to have come into existence and formally notify you that the seller considers neither party bound."
Plaintiff instituted this action against both the sellers and the purchasers to recover its 10% commission, amounting to $6900. After a trial before the judge without a jury, the judge ruled that plaintiff was entitled to the commissions claimed; that the failure to close title was not due to any default by the sellers Dvorak but rather to the default of the purchasers (Sciaraffas), and awarded plaintiff a judgment of $6900 against them. Only the Sciaraffas appeal.
Implicit in the trial judge's ruling was a finding that, contrary to what the sellers' attorney had written on January 6, 1971, a contract had come into existence. We shall assume *492 at this point that that finding was correct and not infected by evidential rulings  to be discussed later  precluding the development of testimony essential to a determination of whether in fact a contract had come into existence.
If, in fact, a contract had come into existence, then the record adequately supports the judge's further finding that the Sciaraffas, by not forwarding the $6900 deposit, had breached their contract with the sellers Dvorak, thus justifying the sellers' termination of the contract.
But the judge erred in his conclusion that merely because the sellers were thus justified in terminating the contract by reason of the purchasers' breach of contract, then, without more, under Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 558 (1967), the purchasers are "liable to the plaintiff for breach of their implied obligation to complete the transaction."
The trial judge misconceived the scope of the defenses available, under Ellsworth Dobbs, Inc. v. Johnson, supra, to an allegedly defaulting purchaser who is sued by a broker for the commissions he would have received from the seller if the sale had been completed. The judge erred in assuming that (1) merely because, as between a seller and purchaser, there has been a breach of contract by the purchaser, the purchaser is ipso facto liable for commissions to the broker involved, and (2) the purchaser's defenses to an action by the broker are limited to those which would be available in an action by the seller against the defaulting purchaser.
From the latter assumption stems the judge's failure to consider the Sciaraffas' contention that their obligation to perform was conditioned on their ability to obtain mortgage financing. Were this an action by the sellers against the purchasers, that contention would not be available as a defense since the written contract did not embody a mortgage contingency clause. The parol evidence rule would bar any attempt, by oral testimony, to thus vary the items of the writing.
*493 But this is not such an action. It is an action by a broker against a defaulting purchaser. Any right of plaintiff to recover commissions from defendants stems not from an express agreement by defendants to pay commissions  there was no such agreement  but rather from defendants' implied obligation to plaintiff-broker to complete the purchase so that if they failed, without valid reasons, to complete the purchase, they would become liable to pay the commissions of which plaintiff was deprived. Ellsworth Dobbs, Inc. v. Johnson, supra at 561; cf. Annotation, "Buyer's default  liability to broker," 30 A.L.R. 3d 1395 (1970).
However, as Ellsworth Dobbs, Inc., supra, demonstrates, in such an action by a broker against a buyer for damages for the alleged violation of that implied obligation, the buyer is not precluded from asserting, and proving by oral testimony, defenses which might not be available in an action between the seller and buyer on the written contract because of the operation of the parol evidence rule.
In Ellsworth Dobbs, Inc., the buyer, Iarussi, was unable to perform his contract with the seller Johnson because he could not obtain the necessary financing. The court recognized that such inability to obtain financing would not be a bar to an action by the seller against the buyer on the contract, but nevertheless ruled that such inability, the broker's knowledge thereof and his express or implied agreement that performance was subject to a financing contingency, would be a defense to an action by the broker, Dobbs, against the buyer.
As the court said:
Iarussi claims that Dobbs' representative, Fleming, was fully aware of his financial condition. This knowledge arose from the previous course of dealings between them, and more specifically from his financial inability to complete the first attempt to buy the Johnsons' property. His testimony, and that of the Johnsons (which was unduly restricted at the trial), is to the effect that when the contract of sale, which is the subject of this suit, was executed, Fleming knew Iarussi's performance depended upon his acquisition of financial backing before the closing; he knew also that the closing itself and his right to commission were so conditioned. On the other hand, Fleming denies knowledge that Iarussi's performance of the contract *494 was contingent upon securing financing. He denies also that he understood or agreed that his commission was subject to Iarussi's success in obtaining financing before the closing date. This factual controversy can only be resolved by a jury.
* * * there is a jury question as to the nature of the relationship between Dobbs and Iarussi. A jury should also decide whether Dobbs (through Fleming) knew and agreed, expressly or impliedly, that performance was subject to the financing contingency and that commission would be earned only on satisfaction of that contingency. If the jury finds in favor of Iarussi on this issue, Dobbs is not entitled to recover. [50 N.J. at 561-562]
So, here, the terms of the written contract are not a bar to the assertion by defendants, as a defense to this action, that plaintiff-broker knew and agreed, expressly or impliedly, that defendants' obligation to perform was contingent on their being able to arrange mortgage financing. That defense and the testimony offered relating thereto must be considered and evaluated.
The judgment under appeal must therefore be reversed and plaintiff's action against the Sciaraffas remanded for a new trial. (Plaintiff did not appeal from the judgment dismissing its claim against the Dvoraks and, in any event, on the record here, there is no basis for imposing liability on the Dvoraks.)
At the retrial there should, among other things, be a full exploration of the issue of whether a contract had come into existence. At the original trial, an erroneous ruling barring any testimony from Mr. Solomon, who acted as Dvoraks' attorney both during the contract negotiations and at the trial, prevented such exploration.[1]
The significant negotiations involving the preparation, signing and delivery of the writing took place between Solomon, the attorney for the sellers, and Mr. Schwartz, the attorney for the purchasers. Their testimony was critical to *495 the resolution of the issue of whether a contract had "come into existence," an essential prerequisite to the right of plaintiff to recover commissions from anyone.
If the fact be that the signed writing was only conditionally delivered to the purchasers' attorney, in effect in escrow, on the understanding that it was not to be deemed delivered until the deposit of $6900 was forwarded to purchasers' attorney, then since more than a reasonable time had elapsed and still the $6900 had not been forwarded, the sellers were justified in their conclusion that a contract had not come into existence  this because there never was a completed delivery giving rise to a binding contract of sale. 1A Corbin on Contracts, §§ 250, 251, 589 (1963); Builders Fair v. Youmans, 39 N.J. Super. 183, 186 (App. Div. 1956); see also, Mangani v. Stadium Bowling Academy, 132 N.J.L. 299, 300 (Sup. Ct. 1944).
Despite the importance (a fact recognized in the trial judge's letter opinion) of the testimony which only the two attorneys who negotiated the writing could give, the judge refused to permit Solomon to testify because he was also the sellers' trial attorney.
The trial judge's ruling was erroneous. While a trial attorney should not offer himself as a witness and his doing so may subject him to disciplinary proceedings, nevertheless the testimony is competent and the failure to permit the attorney to testify is reversible error. See White v. State Bd. of Tax App., 123 N.J.L. 350 (Sup. Ct. 1939), quoted with approval in Callen v. Gill, 7 N.J. 312, 317 (1951); see also, Pierce v. Yaccarino, 72 N.J. Super. 252, 261, 262 (App. Div. 1962).
At the retrial Solomon and Schwartz, the attorneys who handled the negotiations on behalf of their respective clients, should be called to testify.
Reversed and remanded for a new trial of plaintiff's action against defendants Sciaraffa.
NOTES
[1] Apparently much of the colloquy resulting in the ruling took place in chambers and was not recorded. We are, therefore, unable to determine what part that colloquy played in the Sciaraffas' decision not to call Mr. Schwartz, the attorney who represented them during the negotiations but not at the trial, as a witness.