216 N.J. Super. 383 (1987)
523 A.2d 1089
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN RILEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1987.
Decided March 30, 1987.
*385 Before Judges BRODY and LONG.
Scott E. Becker argued the cause for appellant (Becker & Lands, attorneys).
Chana Barron, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney).
The opinion of the court was delivered by LONG, J.A.D.
In 1979 after a jury trial, John Riley was convicted of two counts of murder contrary to N.J.S.A. 2A:113-1 and 2 (currently N.J.S.A. 2C:11-2 and 3). He was sentenced to concurrent custodial terms of 30 years with 15 years of parole ineligibility. On February 23, 1982, the convictions were affirmed on appeal and in 1983 the Supreme Court denied Riley's petition for certification. State v. Riley, 93 N.J. 273 (1983). On September 12, 1984, Riley filed a petition alleging several grounds for post-conviction relief including the fact that one of the jurors at his murder trial, George Egbert, had had damaging information about Riley and was prejudiced against him thus denying him the right to a fair trial. After a hearing, on December 20, 1985, the trial judge denied the petition and Riley filed this appeal claiming that
The failure of a juror to disclose information known to him concerning the defendant prior to trial violated defendant's right to trial by impartial jury.
The facts surrounding this issue require explication. During the voir dire of prospective jurors at Riley's trial, Egbert answered all of the questions posed by the judge as to knowledge, information, bias or prejudice in the negative. Subsequent *386 to the jury selection process Egbert brought himself to the attention of the judge and was individually questioned because he stated that he may have worked with Riley's mother at a restaurant at some time prior to trial. However, neither defense counsel nor the prosecutor objected to Egbert's sitting as a juror because it did not appear that a close relationship existed between him and Riley's mother and he said he could be fair and impartial.
Riley was represented at trial and on appeal by Frank Marcone, an attorney licensed in Pennsylvania, who was admitted pro hac vice for the purpose of defending him. In support of the petition for post-conviction relief on February 15, 1985, Marcone filed a certification with respect to the matter of Egbert:
1. I was the attorney for the defendant, John Riley, at the time of his trial in 1979 for which he is presently incarcerated. The appeal of that conviction was also handled by me. As a result I am fully familiar with the facts set forth herein.
2. At the commencement of the trial in this matter, following the selection of the jury, a juror, George Egbert, brought himself to the attention of the court. His stated reason for doing so was to inform the court that he may have been remotely acquainted with the defendant's mother as a result of having been employed at the Lobster Shack. However, Mr. Egbert was not positive of that fact.
3. Based upon the limited extent of any potential relationship, I did not move to have Mr. Egbert removed from the jury hearing Mr. Riley's case.
4. Subsequent to the time of the trial, I had occasion to see a juror in question, George Egbert. This was not a planned meeting, but occurred spontaneously in connection with my flying.
5. At that time Mr. Egbert stated that he had been aware of the defendant's bad reputation prior to the trial. He also believed that the defendant had assaulted his own mother and sister at times prior to the trial.
6. In sum, Mr. Egbert indicated that the crimes for which the defendant was convicted was the "best thing."
The trial judge held a hearing on the petition on March 29, 1985, after which he disposed of certain other issues not involved in this appeal. However, he declined to rule on the issue of Egbert's bias but asked for a more specific affidavit from Marcone. Marcone filed the following certification on May 24, 1985:

*387 1. I previously submitted an affidavit to this court regarding a conversation I had with George Egbert, a juror in the matter of State v. Riley. This affidavit is made by way of supplementation to the facts contained in the affidavit.
2. The conversation between Mr. Egbert and myself took place at a restaurant in Cape May sometime after the trial and again in a restaurant I believe in Media Pennsylvania wherein I determined that by my conversation with Mr. Egbert that he was then actually residing in Pennsylvania and was spending his weekends in Cape May, New Jersey.
There were no persons present who participated in the conversation and we met in a casual manner. The conversation was initially regarding the trial and eventually led to a short discussion of mutual friends, more particularly, a friend client, Clark Smith.
A plenary hearing was held on August 12, 1985, at which time Marcone was the sole witness. He reiterated the information in the certifications. According to Marcone, during the summer following the trial he had a chance meeting with Egbert in a bar in Cape May County. During the meeting Egbert indicated to Marcone that he had heard of Riley prior to the time of the trial and that Riley's bad reputation was well-known in Cape May. Specifically, Egbert told Marcone that Riley had previously beaten up his own mother and sister, and that Riley had sexually attacked his sister as well. According to Marcone, Egbert went on to relate that he was aware of these incidents prior to the time he sat as a juror, that Riley was essentially a bad character, who deserved punishment and that Egbert believed Riley had committed the crime just because of his reputation. Thereafter Marcone arranged to meet Egbert again in a restaurant in Media, Pennsylvania, the town in which Marcone practices law. At that time Egbert was reluctant to discuss the Riley case.
The trial judge questioned Marcone as to whether Egbert had discussed his opinions and knowledge of Riley with fellow jurors. Marcone indicated that he was left with the distinct impression that Egbert had discussed those matters with the other jurors. When questioned as to why he did not bring this to the attention of the court earlier Marcone explained that
... I know there's a rule in New Jersey that I'm not supposed to talk to a witness or to a juror and I had a little  I was a little uncomfortable about that ...
*388 He went on to say that his primary reason for not reporting the matter was that his public defender co-counsel felt that it was too late in the appellate process to raise a new issue (the case was already pending in the Supreme Court) and that it should be reserved. According to Marcone, he "was obliged to depend substantially upon their advice and by their advice also with their procedural recommendations."
The trial judge denied the petition for post-conviction relief. In a written opinion he outlined the facts related by Marcone whom he characterized as a "poor" and "unconvincing witness" and whose testimony he did not find "to be credible in any significant degree." The judge, however, did not decide the case on that basis. He went on to hold that:
1. The defendant has failed to make an initial showing, independent of his trial attorney's improper and unethical conversations with a juror, that misconduct occurred which tainted the verdict.
The court rules are very clear in New Jersey that no attorney should question any petit juror with respect to any matter relating to the case. The pertinent court rule reads as follows: "Rule 1:16-1 Interviewing Jurors Subsequent to Trial. Except by leave of Court granted upon good cause shown, no attorney or party shall himself or through any investigator or other person acting for him interview, examine or question any grand or petit juror with respect to any matter relating to the case."
The comment in the annotations under this Rule at page 116 indicates that the defendant must make an initial showing that misconduct occurred which tainted the verdict. The commentator states that "admittedly the ability to make such a showing depends largely on chance." As stated by the court in State v. LaFera, 42 N.J. 97, (1964) at page 107: "It may appear odd to recognize a ground for the invalidation of a verdict while denying a litigant a chance to find out whether such an event perchance did occur. The fate of a defendant is thus made to depend upon sheer luck, that the wrongful event somehow comes to light. The weight of the criticism is appreciated, but when contending values clash in their demands, a balance must be struck, and the balance struck is not shown to be a poor one because in some unknowable cases there may be an injustice. Overall the instances of invalidating misbehavior are exceedingly few."
Rule 1:16-1 represents a strong judicial policy in New Jersey prohibiting litigants, their attorneys, or agents from engaging in post trial interviews with jurors. (Rule DR7-108(e) in effect at the time required attorneys to report such conversations to the court promptly).
In the case at hand, the defendant made no initial showing independent of his attorney, Mr. Marcone's, conversations with the juror to show good cause for *389 this court to depose the juror. To hold otherwise, would make a mockery of the court rule, i.e. attorneys or their investigators could question jurors post trial and then seek to use any information improperly obtained to induce the court to depose the juror or jurors further. [emphasis in original]
We disagree with these conclusions and reverse.
We turn first to the State's assertion, which was not raised below, that Riley's claim is procedurally barred by R. 3:22-12. The jury returned its verdict on June 22, 1979. Riley was sentenced on September 18, 1979, and on the same date a judgment of conviction was filed. The petition for post-conviction relief was filed on September 12, 1984, clearly within five years of the sentence and entry of judgment. This comports with the requirements of R. 3:22-12. Nothing in the decision in the case of State v. Dillard, 208 N.J. Super. 722 (App.Div. 1986), which was cited by the State, supports its claim that Riley's petition is out of time because it was not filed within five years of the jury verdict. For calculation purposes under R. 3:22-12, the entry of the judgment of conviction is the critical date.
We turn next to the substance of Riley's petition. The trial judge's decision presents a troublesome issue. If he had gone no further than to say that he disbelieved Marcone's testimony and that Riley had thus failed to establish a sufficient preliminary showing to justify pursuing further inquiry, his holding would be virtually unassailable. State v. LaFera, 42 N.J. 97, 110 (1964). He did not do this however. Instead, he went on to detail what he perceived as Marcone's violation of R. 1:16-1 which provides that:
Except by leave of court granted upon good cause shown, no attorney or party shall himself or through any investigator or other person acting for him interview, examine or question any grand or petit juror with respect to any matter relating to the case.
The trial judge concluded that information gleaned through a breach of the rules should not be considered on an inquiry such as this. See DR7-108.
Our disagreement with the trial judge begins with his conclusion that Marcone violated R. 1:16-1 in obtaining the information which gives rise to this proceeding. From the *390 record before us it appears that Marcone's initial meeting with Egbert was inadvertent and that Egbert's comments about Riley were unsolicited. State v. LaFera, supra, which enunciated the underpinnings of R. 1:16-1 (then R.R. 1:25A), expressed the focus of its concern as willful investigatory efforts into the jury's deliberative process. See also In re Kozlov, 79 N.J. 232 (1979). In so doing, it specifically excluded evidence which comes to light through "sheer luck" from the scope of its disapprobation. 42 N.J. at 107. It seems to us that "sheer luck" is exactly what is involved in this case. Marcone's meeting with Egbert was fortuitous and Egbert's admissions were unsolicited by Marcone as the two were exchanging pleasantries. Thus, we do not see this as a violation of either the letter or the spirit of R. 1:16-1. To be sure, Marcone should not have arranged to meet Egbert at a later date without leave of court. Hacker v. Statman, 105 N.J. Super. 385 (App.Div. 1969), certif. den. 54 N.J. 245 (1969). For this he may be subject to disciplinary sanction but the fact that the later meeting violated the rules does not compromise the information volunteered at the earlier encounter.
Moreover, even if Marcone had violated R. 1:16-1 in speaking to Egbert, it does not follow that whatever information he gained from the interview should be automatically excluded. In general, if a lawyer violates the rules he may subject himself to disciplinary proceedings but we know of no per se bar to the admissibility of information he has learned based upon the ethical violation. No case that we have found either in New Jersey or elsewhere has enunciated such a general rule. On the contrary, it has been held that evidence obtained in violation of applicable disciplinary rules is indeed admissible. State v. Darby, 211 N.J. Super. 367, 376 (App.Div. 1986); Barbetta v. Sciaraffa, 135 N.J. Super. 488, 495 (App.Div. 1975); Suarez v. State, 481 So.2d 1201, 1205-1207 (Fla.Sup.Ct. 1986) cert. den. ___ U.S. ___, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986); State v. Morgan, 231 Kan. 472, 646 P.2d 1064, 1069-1070 *391 (1982); People v. Green, 405 Mich. 273, 274 N.W.2d 448 (1979).
In Barbetta v. Sciaraffa, supra, a trial judge refused to allow a lawyer who was representing a party during litigation to testify to certain facts which were critical to the disposition of the case because the testimony would constitute a breach of the disciplinary rules. See RPC 3.7. This court held that the trial judge erred in refusing to allow the lawyer to testify: "While a trial attorney should not offer himself as a witness and his doing so may subject him to disciplinary proceedings, nevertheless the testimony is competent and failure to permit the attorney to testify is reversible error." Barbetta, supra, 135 N.J. Super. at 495. This is the general rule in New Jersey. See Callen v. Gill, 7 N.J. 312, 317 (1951), quoting White v. State Bd. of Tax App., 123 N.J.L. 350 (Sup.Ct. 1939); Pierce v. Yaccarino, 72 N.J. Super. 252, 261-262 (App.Div. 1962).
We think the trial judge went wrong when he focused on how the information was obtained instead of addressing the nature and quality of the information itself. Evid.R. 41 makes this critical distinction:
Upon inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined.
Clearly, the rule reflects a balance struck in favor of the public's interest in the freedom of debate thought to be essential to proper jury deliberations as against the private interest of a citizen in redressing the injury of a possibly unfair trial. State v. LaFera, supra, 42 N.J. at 106-107. See also Fed.R. Civ.P. 606(b); McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). Thus, it renders inadmissible evidence as to the "mental processes" engaged in by jurors in reaching a verdict. As the comment to the rule notes however
if it may be found, without analyzing the mental processes of jurors, that even one juror was actually biased in a case in such a way as to prevent that juror from objectively weighing the evidence before him, the determination *392 made by the entire jury of which the tainted juror was a member may be set aside. State v. Levitt, 36 N.J. 266 (1961). [Evid.R. 41, Comment at 323]
In State v. Levitt, supra, the Supreme Court analyzed the restrictions in the rule this way:
Though the trial judge cannot examine the thought processes of jurors in reaching their verdict, he can receive jurors' evidence as to the existence of conditions or the occurrence of events to determine whether they showed an adverse prejudice bearing on the verdict. [at 271 (citations omitted)]
The reason for this is obvious. There is no public interest to be served in insulating from scrutiny evidence of jury bias or unfairness which does not touch on the deliberative process. Where such evidence is uncovered even through a breach of ethics, the balance must be struck in favor of the individual's interest in redressing the injury of an unfair trial. Here, Egbert did not divulge the jurors' thoughts or the details of the jury deliberations at the Riley trial. On the contrary, he revealed to Marcone only his personal bias on the subject and the entirely improper reasons on which he based his guilty vote. This information is therefore not subject to the restrictions in Evid.R. 41.
We recognize that to some extent the trial judge based his conclusions on the deterrent effect he thought would flow from the suppression of Marcone's evidence. In effect he formulated an exclusionary rule in order to secure conformity with ethical principles. However, the exclusion of important evidence is a drastic remedy reserved for cases involving the violation of constitutional rights. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). As one court has noted the use of such an exclusionary sanction for a disciplinary rule violation would constitute "overkill." People v. Green, supra, 274 N.W.2d at 455. In our view, the disciplinary process provides a much more effective and direct remedy for deterring ethical violations. This process imposes the sanction on the wrongdoer, the offending attorney, and does not impinge on the search for truth which is at the heart of our judicial system. We think that such disciplinary proceedings will serve to deter most violations and we do not fear, as did the *393 trial judge, that many lawyers will risk ethical charges in the hope of ferreting out information from prohibited sources. We view such a happening as highly unlikely.
Faced with the trial judge's opinion we have no choice but to remand the matter for further proceedings during which he will be required to weigh and evaluate the testimony of Marcone on the same basis as he would that of any other witness. We have also concluded that on the remand the trial judge should hear from Egbert as well. In light of the fact that eight years have passed since Riley's trial, the issue of juror bias, which goes to the very heart of the question of whether Riley was fairly convicted (State v. Thompson, 142 N.J. Super. 274 (App.Div. 1976)), must be determined as expeditiously as possible.
Reversed and remanded.