245 N.J. Super. 390 (1991)
585 A.2d 973
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WARREN TANKSLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1990.
Decided January 25, 1991.
*391 Before Judges BRODY, GRUCCIO and D'ANNUNZIO.
Wilfredo Caraballo, Public Defender, attorney for appellant (Carolyn Anita Parks, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Linda K. Danielson, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
Charged with murder and weapon offenses, defendant was convicted after a jury trial of first-degree aggravated manslaughter, a violation of N.J.S.A. 2C:11-4a, and third-degree possession of a handgun without having obtained a permit, a violation of N.J.S.A. 2C:39-5b. The trial judge imposed a *392 Graves Act sentence of 30 years imprisonment, 10 years to be served before parole eligibility, for the aggravated manslaughter and a concurrent 4 years imprisonment for the weapon offense. Defendant argues that (1) his trial attorney provided ineffective assistance of counsel, (2) the judge erred in restricting his redirect examination respecting a written statement in evidence that he had given the police, (3) the verdict was "against the weight of the evidence," and (4) the sentence was "unduly punitive."
The State presented evidence that defendant and four companions drove to a multifamily building on an August evening around 8:30 p.m. Defendant and three of his companions, two Livingston brothers and Terrence Chatman, left the car and entered a large courtyard behind the building. Among the people leisurely milling in the yard were George Sharp and his sister. One of the Livingston brothers approached Sharp and they began fighting. Sharp's sister testified that after a few minutes she saw the Livingston brother move away from Sharp, and saw Chatman and another man walk up to him and reach for something at their waists. She then heard three or four gunshots after which her brother fell to ground. He had been struck and killed by a single.38 caliber bullet in the back. Another witness testified that as Chatman and his three companions were fleeing she saw that Chatman was carrying a .38 caliber handgun.
The State's two witnesses at the scene could identify Chatman and the Livingston brothers, but neither could identify the fourth man. They could only say that he wore a white jacket with a hood covering most of his face. Sharp's sister testified that one of the two "shooters" was Chatman and the other was the hooded man. Defendant, who was then 17 years old, later admitted in a written statement to the police that he, Chatman and the Livingston brothers were the four men who had entered the yard together shortly before the shooting. He stated in the statement and testified at trial that Chatman alone did the shooting.
*393 As a result of the investigation that followed, police went to defendant's home several days after the shooting. Defendant was not there. The police told his mother that they wanted to question him about the homicide. Defendant later went to police headquarters where he gave the police the written statement in the presence of his mother and his attorney.
Defendant stated in the statement that Chatman had come to his home to ask him to accompany him to the building where the shooting later occurred. Chatman asked defendant to bring a handgun. The only reason Chatman gave for making the trip was that someone had robbed him of a gold chain. Defendant explained in his testimony that he understood that the purpose of the trip was to get back the chain. He denied, however, that he intended to use the gun for that purpose. In his statement he stated that his gun was not loaded and he had no bullets. In his testimony he added that the gun was inoperable.
Defendant's trial testimony was consistent with the State's witnesses' description of the fight between Sharp and the Livingston brother. However, he testified that Chatman alone stepped up to Sharp and shot him. He further testified that he never removed his gun from his trousers pocket and was not aware that Chatman had a gun. He ran home after the shooting, disposing of his gun in a cemetery that was along the way.
Defendant's main argument arises from the fact that the attorney who witnessed the taking of his statement also represented him at trial. Defendant contends that this presented a conflict of interest and led to the trial judge's prejudicial curtailment of his redirect examination. With certain exceptions, a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness...." RPC 3.7. The ethical prohibition is not against being a witness, but against acting as trial attorney in a case where it is likely that the attorney's testimony will be necessary. An attorney representing a party at trial is competent to testify at the trial even though his decision to try the case may have been unethical. See Callen v. Gill, 7 N.J. 312, 318, 81 A.2d 495 (1951); Barbetta *394 v. Sciaraffa, 135 N.J. Super. 488, 495, 343 A.2d 770 (App.Div. 1975).
Here defendant's trial attorney witnessed the taking of defendant's written statement. If the admissibility or accuracy of the statement had been at issue, it is likely that the attorney's testimony would have been necessary and he should not have undertaken to represent defendant at trial. However, defendant himself testified emphatically that the material facts in his statement were true and he has never argued that the statement is inadmissible.[1] Defendant does not suggest any basis for his contention that his trial attorney had a conflict of interest and we find none in this record.[2]
The issue surfaced at trial on defendant's redirect examination. His attorney began questioning as follows:
Q. Mr. Tanksley, going back to August  on September 2, 1987 the day which you made the statement to the police officer, do you recall what had taken place with respect to my presence and Detective Kelshaw?
A. Yes.
Q. Okay. How would you describe what happened between Detective Kelshaw and myself?
A. Well, when he was asking me questions he wanted to ask me questions regarding all what happened, and he told me that if I don't tell him I'm going to be arrested.
Q. In other words, you were led to believe that if you did not make a statement 
THE COURT: Is this testimony? You'll have to be sworn, Counsel.
The judge properly ruled that defendant's attorney could not use the jury's awareness that he had witnessed the taking of defendant's statement to give unsworn testimony in the guise *395 of restating defendant's answer to the question. We do not know from this record what admissible evidence, if any, defendant's attorney may have been trying to present or how the judge's ruling prevented him from presenting it.
Although defendant labels his next argument "the verdict is against the weight of the evidence," the substance of the argument is that the judge erred when she denied his motion for a judgment of acquittal. The test for deciding a motion for a judgment of acquittal is whether, "viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967). Viewing the State's evidence in that light we are satisfied that it supported the guilty verdict.
We are, however, troubled by the sentence. Aggravated manslaughter carries an ordinary base term of imprisonment between 10 to 30 years. N.J.S.A. 2C:11-4c. Because this aggravated manslaughter is a Graves Act crime, it also carries a period of parole ineligibility between one-third and one-half of the sentence imposed. N.J.S.A. 2C:43-6c. The judge found that there are no mitigating sentencing factors and that the aggravating factors "substantially outweigh the mitigating factors," requiring imposition of the maximum base term of imprisonment.
Our task in reviewing a sentence includes determining whether the trial judge based her findings respecting the sentencing factors on "competent, reasonably credible evidence." State v. Roth, 95 N.J. 334, 363, 471 A.2d 370 (1984). Several of those critical findings are not supported by the evidence.
The judge found as aggravating factors that defendant "had a lengthy juvenile record" and that there is "a very strong risk that this defendant will continue to commit additional criminal offenses" as evidenced by his being charged with a juvenile offense after being charged with the present offense and by the "overtones of narcotics being in the background of the particular *396 homicide." She described defendant as a "willing participant ... to do murder" "for the specific purpose of seeking out the victim in order to seek vengeance for some prior incident involving alleged fence by the defendant of a gold chain." Although defendant was a juvenile when he committed the offense, the judge dismissed his youth as a mitigating factor because he was not "substantially influenced by another person more mature than he...." See N.J.S.A. 2C:44-1b(13).
The jury determined that defendant was not a willing participant in a purposeful or knowing homicide. There is no competent evidence in the record that he participated in this aggravated manslaughter as part of CDS dealing or fencing stolen property. He had been adjudicated delinquent three times and given a year's probation each time: when he was 15 years old he received stolen property and engaged in criminal mischief; a few days after his 16th birthday he was found in possession of CDS. The record provides no further details of these offenses.
Defendant was charged as a juvenile with receiving stolen property and possession of CDS after he was charged in this matter. Both charges were later dismissed. The record provides no further details of these matters or five earlier charges that were dismissed. A sentencing judge may consider a defendant's juvenile record of charges that did not result in convictions. See State v. Green, 62 N.J. 547, 571, 303 A.2d 312 (1973) (sentencing judge may consider record of adult arrests that did not result in convictions). Standing alone, however, a charge may not be considered the equivalent of a finding of guilt. The charge may be considered only insofar as it is relevant to the character of the sentence. Ibid. As Green points out:
For example, the arrest may relate to an offense the defendant does not dispute, which offense was disposed of without further action as part of a plea bargain involving other offenses. Again the sentencing judge might find it significant that a defendant who experienced an unwarranted arrest was not deterred by that fact from committing a crime thereafter. There may be still other reasons depending upon the total circumstances which could warrant at least consideration of the fact of arrest. We need not try to anticipate all situations. The important limitation of course is that the sentencing judge shall *397 not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt. [Ibid.]
Where a sentencing judge weighs a defendant's record heavily because it is "lengthy," and the record is lengthy because of numerous charges or arrests that did not result in convictions, the judge should state the reasons why those charges and arrests are relevant to the character of the sentence being imposed. That was not done here.
The Supreme Court, referring to a 22-year-old defendant, has stated that "defendant's relative youth ordinarily would inure to his benefit in evaluating the choice of extended sentence...." State v. Dunbar, 108 N.J. 80, 95, 527 A.2d 1346 (1987). Although this 17-year-old defendant did not receive an extended sentence, the mandatory period of parole ineligibility that is tied to the choice of base prison sentence required the judge to take special care in identifying sentencing factors. The trial judge should reconsider the sentence in light of these observations.
The convictions are affirmed. The sentence is set aside and the matter remanded for resentencing. We do not retain jurisdiction.
NOTES
[1] Defendant testified that the statement was inaccurate in two inconsequential respects. He testified that he had said that the gun he carried was merely small, whereas the written statement attributes to him the statement that the gun was a .32 caliber gun. The variance favors defendant in view of the fact that Sharp was killed with a .38 caliber gun. Defendant also testified that he had said that he had no bullets and that the gun was mechanically inoperable, whereas the statement attributes to him only the statement that he had no bullets.
[2] We do not preclude defendant from filing a petition for post-conviction relief to determine from an enlarged record whether there was a prejudicial conflict.