**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3277-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEE M. TRAVERS,

    Defendant-Appellant.

_____

Submitted November 28, 2018 – Decided January 2, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 09-12-2238.

Joseph E. Krakora, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Lee Travers appeals from his July 1, 2016 convictions after a jury trial. He originally pled guilty to second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and was sentenced pursuant to a plea agreement to eight years in prison with an eighty-five percent parole disqualifier subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He successfully appealed based on his failure to provide a factual basis, and we vacated his guilty plea and remanded for further proceedings. State v. Travers, No. A-0172-12 (App. Div. May 13, 2014). The jury convicted defendant of first-degree attempted murder of his wife, Linda, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (Count One), second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Two); third-degree terroristic threats against Linda, N.J.S.A. 2C:12-3(b) (Count Three), third-degree aggravated assault against Linda, N.J.S.A. 2C:12-1(b)(2) (Count Four), fourth-degree aggravated assault against Linda, N.J.S.A. 2C:12-1(b)(4) (Count Five), third-degree terroristic threats against his son, N.J.S.A. 2C:12-3(b) (Count Nine), and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Count Ten). He was acquitted of the charges against his daughter: second-degree endangering the welfare of his child, N.J.S.A. 2C:24-4(a)(2) (Count Six), and third-degree terroristic threats, N.J.S.A.

2C:12-3(b) (Count Seven). He was also acquitted of second-degree endangering the welfare of his son, N.J.S.A. 2C:24-4(a)(2) (Count Eight). The jury heard evidence that, in the presence of his fifteen-year-old son and eleven-year-old daughter, he threatened to kill his wife Linda, aimed his gun at her, and pulled the trigger numerous times, but the gun did not fire. Defendant, sixty-one years old at the time of the crimes in February 2009, was sentenced to an aggregate term of twenty-nine years in prison with more than eighteen years of parole ineligibility. He will be first eligible for parole when he is seventy-nine years old. He argues the seizure of the gun found in his car was illegal, the jury charge was defective, and his sentence was excessive. After reviewing the record in light of the contentions advanced on appeal, we affirm the convictions, but remand for resentencing.

In 2009, defendant and Linda had been married twenty-two years and lived in a house in Toms River with their son and daughter. Their relationship had deteriorated, and the couple slept in separate rooms. On a morning in February, after an argument between the two, Linda told defendant he had two days to move out of the house. That evening, Linda took their daughter out for dinner, returning home at approximately 10:00 p.m. Linda heard defendant on the telephone saying he was "going to put an end to this" and that "he'd take

everybody out." He said not to "believe everything you read tomorrow in the newspaper." Linda woke her son.

Defendant came upstairs, where his daughter was at the door of the bedroom and his son and Linda inside. He told Linda, "you're done, I'm gonna kill you." Defendant raised his hand, aiming a gun at Linda and pulled the trigger at least six times, but the gun did not fire. Their son grabbed and lowered defendant's hand, while Linda ran downstairs. Linda fled the house, crossed the street, and called 9-1-1. As defendant and his son were struggling over the gun, defendant said "let me go or I'll shoot you, too." Defendant then ran out of the house.

After leaving the house, defendant drove to the home of an acquaintance, Joseph Lee, who lived twenty to twenty-five minutes away. Inside Lee's home, defendant told Lee he "he fired some shots at his wife and [his son] got in between it and he shot at him and the gun didn't work." Defendant collapsed, and Lee called 9-1-1 because he thought defendant was having a stroke or heart attack. The police and an ambulance arrived in response to Lee's call. They found defendant unresponsive and unconscious on the floor. Defendant did not have a gun on him.

Once defendant was in custody, the police located defendant's car in Lee's driveway. They looked through the window of the locked car and saw an old revolver on the front seat. The gun was in poor condition. Concerned that the gun could discharge because it was cocked and loaded with six rounds, the police unlocked the car, removed the gun, and rendered it safe. Defendant did not have a permit to carry a gun.

The State's firearms expert examined the gun and found it to be "fireable," although it had a "cylinder timing" problem. In order to fire the gun, the expert had to turn the cylinder by hand several degrees to align the firing pin and the hammer. All of the bullets showed impressions from the firing pin, indicating that the trigger was pulled at least six times.

The gun was destroyed, pursuant to court order, prior to trial. The parties entered into a trial stipulation that the loaded revolver was taken from defendant's car and destroyed.

Defendant argues on appeal:

> POINT I: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE SEIZURE OF THE GUN WHERE THE POLICE OFFICERS SEIZED THE GUN FROM DEFENDANT'S AUTOMOBILE WITHOUT A WARRANT AND UNDER CIRCUMSTANCES WHERE THE DISCOVERY OF THE GUN WAS NOT

5

INADVERTENT AND THERE WAS NO EXIGENCY TO JUSTIFY THE WARRANTLESS SEIZURE.

POINT II: THE TRIAL COURT ERRED IN CHARGING THE JURY CONCERNING DEFENDANT'S ATTEMPTING TO COMMIT MURDER WHERE HE DID NOT COMPLETE THE CRIMINAL ACT NOR WAS HE ABLE TO DO SO UNDER THE ATTENDANT CIRCUMSTANCES. (NOT RAISED BELOW).

POINT III: THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT TO SUCH A DRACONIAN AND UNJUST SENTENCE BASED UPON THE RECORD AND, THEREFORE, DEFENDANT'S SENTENCE SHOULD BE VACATED.

## I. Motion to Suppress

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Sencion, 454 N.J. Super. 25, 31 (App. Div. 2018) (quoting State v. Boone, 232 N.J. 417, 425-26 (2017)). A reviewing court does so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" Ibid. (quoting State v. Gamble, 218 N.J. 412, 424-25 (2014)). "A trial court's findings should not be disturbed simply because an appellate

6

court 'might have reached a different conclusion . . . .'" State v. Mann, 203 N.J. 328, 336 (2010) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). We owe no deference "to conclusions of law made by trial courts in suppression decisions, which we instead review de novo." Sencion, 454 N.J. Super. at 31-32.

"The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution require that police officers obtain a warrant before conducting a search, unless that search falls into a recognized exception to the warrant requirement." Id. at 32. "A search without a warrant is presumptively invalid" unless it falls within an exception to the warrant requirement, Mann 203 N.J. at 340, and the State "bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure 'falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Elders, 192 N.J. 224, 246 (2007) (quoting State v. Pineiro, 181 N.J. 13, 19-20 (2004)).

"Those exceptions include, among others, plain view . . . ." Sencion, 454 N.J. Super. at 32 (quoting State v. Pena-Flores, 198 N.J. 6, 11 (2009)). Probable cause is required to invoke the "plain view" doctrine. State v. Johnson, 171 N.J. 192, 208 (2002). Probable cause has been defined as "a well-grounded suspicion

that a crime has been or is being committed." State v. Moore, 181 N.J. 40, 45 (2004) (quoting State v. Nishina, 175 N.J. 502, 515 (2003)).

Under the plain view doctrine at the time this case was decided,[1] three elements were required: 1) a police officer "must be lawfully in the viewing area"; 2) the officer "has to discover the evidence 'inadvertently'"; and 3) it must be "'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure." Mann, 203 N.J. at 341 (quoting State v. Bruzzese, 94 N.J. 210, 236 (1983)). The "inadvertence" prong of the plain view test "is satisfied if the police did not 'know in advance the location of the evidence and intend to seize it.'" Johnson, 171 N.J. at 211 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 470 (1971)).

Defendant concedes the police were lawfully in the viewing area of the gun and the officers reasonably believed at the time of the seizure that the gun may be evidence of a crime. Defendant challenges, however, the State's claim that recovery of the gun was "inadvertent," as was required by the plain view standard then in effect. Defendant posits that because the police responded to a

---

[1] The New Jersey Supreme Court eliminated the second prong, "inadvertence," from the plain view test, but made clear that the ruling was prospective only. State v. Gonzales, 227 NJ. 77, 82 (2016).

9-1-1 call concerning defendant having a gun, the State cannot claim that the police's discovery of the gun was inadvertent.

The trial court found the testimony of the State's witnesses credible, and the photographs moved into evidence supported the State's witnesses' testimony as it "related to the condition and position of the handgun and the debris in and condition of the interior of the vehicle." The court found that the gun in defendant's car was in plain view and that the condition of the gun posed an imminent danger, creating exigent circumstances permitting the officers to enter the car to retrieve the weapon. "Because the seizure of the firearm . . . was proper under the plain view doctrine, it was not necessary for the State to establish exigent circumstances under the automobile exception." State v. Reininger, 430 N.J. Super. 517, 537 (App. Div. 2013).

The officers did not know in advance the location of the gun and did not intend to seize it. The search, therefore, met the standard under the plain view test. Mann, 203 N.J. at 341. The trial court did not err in denying defendant's motion to suppress based on the plain view exception to the warrant requirement.

## II. Attempted Murder Charge

Defendant argues that the jury should not have been instructed on the theory of impossibility under N.J.S.A. 2C:5-1(a)(1), because defendant did not

and could not have completed the criminal act because the gun used in the crime had a cylinder timing issue. Alternatively, defendant argues that at a minimum, the jury should also have been instructed on the substantial step theory under N.J.S.A. 2C:5-1(a)(3).

Pursuant to N.J.S.A. 2C:5-1(a):

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he [or she]:
>
> (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
>
>   . . . .
>
> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

Attempt under N.J.S.A. 2C:5-1(a)(1) "concerns a completed crime which fails of its purpose because the facts are not as defendant believes them to be," whereas attempt under N.J.S.A. 2C:5-1(a)(3) only "requires that the actor, with intent to commit the crime, takes a substantial step toward its commission." State v. Kornberger, 419 N.J. Super. 295, 302 (App. Div. 2011).

A-3277-16T3

"Attempted murder requires that a 'defendant must have purposely intended to cause the particular result that is the necessary element of the underlying offense-death.'" State v. Sharp, 283 N.J. Super. 296, 299 (App. Div. 1995) (quoting State v. Rhett, 127 N.J. 3, 7 (1992)); N.J.S.A. 2C:11-3(a)(1); N.J.S.A. 2C:5-1(a).

Defendant concedes defense counsel did not contemporaneously object to the jury charge. When a defendant fails to object contemporaneously to a jury charge, the plain error standard applies, State v. Nero, 195 N.J. 397, 407 (2008), and thus "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012). But, erroneous jury instructions are "poor candidates for rehabilitation . . . ." Id. at 196 (Hoens, J., dissenting) (quoting State v. Vick, 117 N.J. 288, 289 (1989)).

The trial court instructed the jury on attempted murder based on the impossibility theory under N.J.S.A. 2C:5-1(a)(1), stating that a person is guilty of an attempt to commit murder if "the person purposely engaged in conduct which was intended to cause the death of the victim if the attendant circumstances were as a reasonable person would believe them to be." See Model Jury Charges (Criminal), "Attempted Murder – Impossibility (N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1))" (approved Dec. 1992). The evidence

11

demonstrated that defendant aimed his fully loaded gun at his wife, and pulled the trigger at least six times, thus had the gun been operating properly, Linda would have been shot. See Kornberger, 419 N.J. Super. at 302.

Defendant's conduct fits precisely the definition of attempted murder under N.J.S.A. 2C:5-1(a)(1) provided by State v. Condon, which provides this example: "where the person purposefully or knowingly aims what he [or she] believes is a properly functioning gun at another person and pulls the trigger, intending to kill the other person, unaware that the gun is inoperable." 391 N.J. Super. 609, 617 (App. Div. 2007). The trial court did not err in giving the jury instruction on attempted murder based on impossibility under N.J.S.A. 2C:5-1(a)(1), and did not err in failing to give the jury instruction based on a substantial step under N.J.S.A. 2C:5-1(a)(3).

### III. Excessive Sentence

An appellate court applies "a deferential standard of review to the sentencing court's determination, but not to the interpretation of a law." State v. Bolvito, 217 N.J. 221, 228 (2014). "Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). An appellate court may not "substitute

[its] judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014).

We must, however, ensure that the trial court followed the appropriate sentencing guidelines. We determine whether the trial court: 1) exercised discretion that "was based upon findings of fact grounded in competent, reasonably credible evidence"; 2) "applied the correct legal principles in exercising its discretion"; and 3) applied the facts to the law in a manner that demonstrates "such a clear error of judgement that it shocks the conscience." State v. McDuffie, 450 N.J. Super. 554, 576 (App. Div. 2017) (quoting State v. Megargel, 143 N.J. 484, 493 (1996)).

"In exercising its authority to impose sentence, the trial court must identify and weigh all of the relevant aggravating factors that bear upon the appropriate sentence as well as those mitigating factors that are 'fully supported by the evidence.'" Blackmon, 202 N.J. at 296 (quoting State v. Dalziel, 182 N.J. 494, 504-05 (2005)).

Defendant argues the sentencing court abused its discretion when it found aggravating factor one applied because of defendant's daughter's victimization, when defendant was acquitted of the charges against his daughter, and also erred when it gave only little weight to mitigating factor seven.

The sentencing court found mitigating factor seven, defendant's prior law-abiding life, N.J.S.A. 2C:44-1(b)(7), but gave the mitigating factor "very, very slight weight." As we stated in defendant's prior appeal: "Defendant's prior criminal record consists of an ordinance violation in 1985, as well as a disorderly persons conviction and two more ordinance violations relating to a single incident in 2004." Travers, slip op. at 3. The sentencing court considered defendant's arrest record in conjunction with the seriousness of his current convictions and found that it "certainly demonstrate[d] antisocial behavior." "Adult arrests that do not result in convictions may be 'relevant to the character of the sentence . . . imposed.'" State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (alteration in original) (quoting State v. Tanksley, 245 N.J. Super. 390, 397 (App. Div. 1991)). When considering arrests, however, most importantly "the sentencing judge shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt." State v. Green, 62 N.J. 547, 571 (1973).

The seriousness of a current crime should also not be used to minimize a law-abiding life when the defendant has lived a long, crime-free life. The sentencing court properly considered mitigating factor seven, as a sixty-nine-year-old person with defendant's history should be considered to have lived a

lengthy, law-abiding life. She gave factor seven less weight than it appears to merit, however.

The court also found aggravating factors one, the nature and circumstances of the offense, N.J.S.A. 2C:44-1(a)(1); three, the risk that defendant would commit another offense, N.J.S.A. 2C:44-1(a)(3); and nine, the need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). The court found factor one applied because the acts "were committed by the defendant in a cruel manner and . . . his intent was to commit pain and suffering on his victims . . . ." "[A]ggravating factor one must be premised upon factors independent of the elements of the crime and firmly grounded in the record." State v. Fuentes, 217 N.J. 57, 63 (2014). The acts committed by defendant required the element of intent, including the intent to kill. See N.J.S.A. 2C:5-1(a); see also N.J.S.A. 2C:11-3; N.J.S.A. 2C:39-4(a); N.J.S.A. 2C:12-3(b); N.J.S.A. 2C:12-1(b)(2) and (4); N.J.S.A. 2C:39-5(b). Therefore, by considering defendant's intent as an aggravating factor, the sentencing court double-counted an element of the crimes. "Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." State v. A.T.C., 454 N.J. Super. 235, 254 (App. Div.

2018) (quoting State v. Lawless, 214 N.J. 594, 608 (2013)). "To do so would result in impermissible double-counting." A.T.C., 454 N.J. Super. at 254.

A court may consider harm caused to a non-victim of a crime for which a defendant is being sentenced. Lawless, 214 N.J. at 615. Defendant, however, was acquitted of the charges against his daughter, the very same behavior the court relied on to find aggravating factor one. See State v. Farrell, 61 N.J. 99, 107 (1972) (holding that "unproved allegations of criminal conduct should not be considered by a sentencing judge"); see also State v. Sainz, 107 N.J. 283, 294 (1987) (finding that a sentencing court must not sentence a defendant "for a crime that is not fairly embraced by the guilty plea").

The sentencing court stated, "I also have considered . . . the [eleven]-year-old daughter, while the defendant is not convicted of, she is not technically the victim of a crime for which the defendant has been sentenced, I can consider as part of the nature and circumstances under aggravating factor number [one]." Considering a charge, after acquittal, as an aggravating factor is similar to double-counting and ignores the jury's findings. The sentencing court explicitly found aggravating factor one based on the intentional manner in which defendant committed the crimes of threatening his wife and son and attempting

to kill his wife, and its impact on his daughter, whom he was acquitted of threatening or endangering.

The court concluded that the aggravating factors outweighed the mitigating factors and sentenced defendant, at the age of sixty-nine, to twenty-nine years of incarceration with more than eighteen years of parole ineligibility. The State concedes that defendant's conviction on Count Two, possession of a weapon for an unlawful purpose, should have merged into his conviction on Count One, attempted murder. Defendant argues all of the sentences should have been concurrent because, even though there were two victims, his wife and son, the crime occurred at the same time and location and was part of one single criminal episode, and the conduct against his son was collateral to defendant's objective with respect to his wife.

"[M]ultiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a); see also State v. Randolph, 210 N.J. 330, 354 (2012) (finding that a sentencing court should be cautious when imposing "multiple consecutive maximum sentences unless circumstances justifying such an extraordinary overall sentence are fully explicated on the record"). Five factors that a court should consider in determining whether to impose a concurrent or consecutive sentence are:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous.

[State v. Molina, 168 N.J. 436, 441-42 (2001) (quoting State v. Yarbough, 100 N.J. 627, 644 (1985)).]

These facts "should be applied qualitatively, not quantitatively." State v. Carey, 168 N.J. 413, 427 (2001).

"[C]rimes involving multiple victims represent an especially suitable circumstance for the imposition of consecutive sentences because the 'total impact of singular offenses against different victims will generally exceed the total impact on a single individual who is victimized multiple times.'" Molina, 168 N.J. at 442 (quoting Carey, 168 N.J. at 429). The "multiple-victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms." Ibid. (quoting Carey, 168 N.J. at 429-30).

18

The sentencing court considered the <u>Yarbough</u> factors and found defendant's attempted murder of his wife, Count One, and defendant's threat to his son, Count Nine, were two different crimes that had separate consequences justifying consecutive terms. The sentence for Count Ten, unlawful possession of a weapon, was imposed consecutively to Counts One and Nine because the court found it dealt with a different fact pattern than Counts One and Nine.

The court did not abuse its discretion in imposing consecutive terms for Counts One and Nine. Although defendant's conduct resulting in the two convictions occurred at the same time and location, it was directed at two different people. We do not, however, find sufficient reasons to sentence defendant consecutively for possession of a gun without a permit. This crime occurred with the others in one continuous episode and it was a misapplication of discretion to order that it be served consecutively, especially in light of defendant's age.

The court must consider defendant's parole eligibility. N.J.S.A. 2C:43-2(e); <u>see also</u> <u>State v. Hannigan</u>, 408 N.J. Super. 388, 399 (App. Div. 2009) (noting that because "a court's decision to impose consecutive indeterminate sentences has an impact on primary parole eligibility," it "must consider that

impact when imposing consecutive sentences"). Under the sentence imposed defendant would not be eligible for parole until he is seventy-nine years old.[2]

Moreover, empirical evidence suggests that incarceration of inmates, such as defendant, into old age generally results in overburdened prisons while offering little in terms of public safety. The Pew Charitable Trusts & the John D. and Catherine T. MacArthur Foundation, State Prison Health Care Spending: An Examination, 9 (Jul. 2014), https://www.pewtrusts.org/~/media/assets/2014/07/stateprisonhealthcarespendi ngreport.pdf. Similarly, "studies demonstrate that the risk of recidivism is inversely related to an inmate's age." United States v. Howard, 773 F.3d 519, 532-33 (4th Cir. 2014) (citing Tina Chiu, It's About Time: Aging Prisoners, Increasing Costs, and Geriatric Release, Vera Inst. of Justice (Apr. 2010), http://www.vera.org/pubs/its-about-time-aging-prisoners-increasing-costs-and-geriatric-release-0) (vacating the life sentence of a forty-one-year-old defendant as substantively unreasonable where the defendant had been considered a potential recidivist based on stale crimes).

---

[2] Defendant's prior guilty plea to less serious crimes would have rendered him eligible for release in 2016, when he was sixty-nine years old.

 A-3277-16T3

Given the court's lack of consideration of defendant's age at parole eligibility, the court's improper consideration of aggravating factor one and improper consecutive sentence for possession of a gun without a permit, we remand for resentencing. Also, as conceded by the State, the conviction for possession of a gun for an unlawful purpose, Count Two, merges into Count One.

The convictions are affirmed, but we remand for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION