211 N.J. Super. 367 (1986)
511 A.2d 1222
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK DARBY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 13, 1985.
Decided May 28, 1985.
Remanded March 25, 1986.
Resubmitted May 16, 1986.
Decided June 27, 1986.
*368 Before Judges MORTON I. GREENBERG and GAYNOR.
Thomas S. Smith, Jr., Acting Public Defender, attorney for appellant (Michael J. Witt, Designated Counsel, of counsel and on the brief).
George L. Schneider, Essex County Prosecutor, attorney for respondent (Marc J. Friedman, Assistant Prosecutor, of counsel and on the brief).
Remanded by Supreme Court March 25, 1986.
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
Defendant was indicted in Essex County on January 14, 1980 for conspiracy to murder David Kelly and Beverly Harrington, for the murder of each and for possession of two handguns without a permit. N.J.S.A. 2C:5-2; N.J.S.A. 2C:11-3; N.J.S.A. 2C:39-5(b). He was convicted on all four counts and, after *369 merger of the conspiracy count into the murder counts, was sentenced to two life sentences with 25 year periods of parole ineligibility for the murders and to a five year term on the weapons count. The sentences were consecutive to each other and to a sentence in Union County. He appealed and in an unreported opinion we affirmed on May 28, 1985.
On the day of our decision, defendant filed a motion to file a supplemental brief raising new arguments, but inasmuch as our opinion was released before the motion was received it could not be considered. Defendant wished to assert before us that a statement he gave on January 16, 1980 was wrongly admitted as it was involuntary and improperly obtained by the Essex County Prosecutor's office. Thus on June 6, 1985 he filed a petition for rehearing. By our order of June 28, 1985 we reserved substantive action on the petition and directed the parties to brief the issues raised in the proposed supplemental brief. The briefs were filed and after we considered them we granted the petition on September 5, 1985, but adhered to our decision of May 28, 1985 as we determined that the issues raised were clearly without merit. R. 2:11-3(e)(2).
Subsequently defendant petitioned for certification and the Supreme Court by order of March 25, 1986 granted the petition "limited solely to the defendant's sixth amendment claim that his right to counsel was violated by the post-indictment interrogation of defendant by representatives of the prosecutor. See, Comment to Rule of Professional Conduct 3.8, citing United States v. Callabrass, 458 F. Supp. 964 (S.D.N.Y. 1978)." The Supreme Court 103 N.J. 493 remanded this matter to us and did not retain jurisdiction. By this opinion we dispose of the remanded issue.
Inasmuch as the case has been remanded only on the above issue we do not describe the crimes themselves but rather set forth only the circumstances surrounding the giving of the statement. At a Miranda[1] hearing, at which Detective William *370 Clark of the Newark Police Department testified, it was established that while incarcerated, apparently in Essex County, defendant wrote a letter to an assistant prosecutor in Union County indicating that he wanted to make a statement to the Newark police about certain crimes, as well as a proposed murder of a Newark policeman. News of the receipt of this letter was obviously disseminated as on January 16, 1980 Detective Reitzel of the homicide squad of the Essex County Prosecutor's office placed a call to Clark and informed him that defendant wanted to talk to the Essex County authorities in reference to a robbery and other matters. As a result, Clark, Reitzel, Investigator Morales of the Newark Police Department and Assistant Prosecutor Norman Menz of the Essex County Prosecutor's office went to the Hudson County jail where defendant was then confined, arriving at approximately 4:00 p.m. on January 16, 1980.
The officers met with defendant in an interview room in the jail, identified themselves and their agencies and informed defendant they had come at his request. No defense counsel was present. After they asked defendant what he wanted to talk about, defendant described the subject. The officers orally advised defendant of his rights under Miranda by reading them to him from a standard form. Inasmuch as the officers initially believed that defendant was not involved in anything that he was going to discuss, they did not at first ask him for a signed waiver. Defendant then gave two statements to Detective Clark which did not relate to the murders of Kelly and Harrington. After giving the statements which were not incriminating of him, defendant read and signed them.
Detective Reitzel then gave Miranda warnings to defendant and included the fact that he, Reitzel, wanted to talk about the murders of Kelly and Harrington. After he received this advice, defendant signed a form waiving his Miranda rights. Defendant was told that a co-defendant, Teddy Brown, had given a statement concerning the incident characterizing defendant as the triggerman. Defendant then stated that he would give a statement. Detective Reitzel asked the questions *371 and typed the statement. Defendant was asked to read the statement, after which he indicated that the statement was true and that he did not desire to change it. Defendant then signed the statement. Clark testified that there were no threats, force or intimidation used in the taking of the statement. In the statement defendant acknowledged being present during the murders.
Defendant's version of the facts surrounding the taking of the statement was substantially different from Clark's. Defendant claimed that on January 9, 1980, he was in the custody of the Newark Police Department and was questioned about a robbery of December 6, 1979 in which a police officer had been killed and about the murders of Kelly and Harrington. Defendant claimed that during the questioning he was physically abused and was told that the police would go to his home and kill everyone there if necessary. Defendant was worried about his mother and felt that his family was in danger from people on the street.
Defendant said when he was questioned on January 16, 1980 at the Hudson County jail he was shown Brown's statement implicating him. Defendant continued to deny that he was present at the scene of the murder. He said that the statement he then gave was not true and he signed the waiver and statement because of a threat from Menz that he would be sent back to the Essex County jail if he did not cooperate. Defendant agreed, however, that when the officers arrived at the Hudson County jail he signed a form permitting them to see him. He also admitted that in a letter he sent to the assistant prosecutor he stated that he wanted to speak to the Essex County authorities about a murder that occurred in Newark in December.
Assistant Prosecutor Menz testified at the Miranda hearing and denied that he had ever threatened defendant with transfer to the Essex County jail. He agreed, however, that defendant had no attorney present during the questioning.
*372 The trial judge found beyond a reasonable doubt that the statement was taken in accordance with the facts as described by Detective Clark and Assistant Prosecutor Menz. He specifically found defendant's allegations of a prior beating incredible, Detective Clark was telling the truth and Assistant Prosecutor Menz did not threaten to transfer defendant to the Essex County jail. The trial court said defendant gave the statement in an attempt to place the blame on co-defendants and did so voluntarily. He also found that Miranda warnings were effectively given and the right to counsel under that decision waived. Thus the statement was admissible and it was introduced at the trial.
The issue implicated on this remand is traceable to the circumstance that the indictment was returned two days before the statement was given, thus triggering defendant's right to counsel. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The judge's decision, though disposing of voluntariness and Miranda issues, does not deal with this Sixth Amendment problem.
We are greatly assisted in our resolution of this matter by the decision of the Supreme Court of the United States in Michigan v. Jackson, 475 U.S. ___, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). There the Supreme Court held that for Sixth Amendment purposes once formal legal proceedings have been commenced against a defendant, if the police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel any waiver of the defendant's right to counsel for the police-initiated interrogation is invalid. 475 U.S. at ___, 106 S.Ct. at 1410, 89 L.Ed.2d at 642. The Court reached this result largely by following Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held that under Miranda, once an accused in custody requests counsel he cannot be questioned without an attorney unless he initiates the further communications, exchanges or conversation with the police. 451 U.S. at 484-485, 101 S.Ct. at 1884-1885, 68 L.Ed.2d at 387.
*373 In our view a similar analysis should be made here as in Edwards inasmuch as the Court in Jackson followed that case. Thus, we conclude that under the Sixth Amendment if an indicted defendant in custody initiates a conversation with the police regarding criminal activities and, after being given Miranda warnings effectively waives counsel, his voluntary statement will be admissible, at least when, as he concedes in his brief was so here, he has "not yet been appointed counsel." Accordingly, defendant's statement was properly admitted.
We are supported in our result by the recent decision of this court in State v. Porter, 210 N.J. Super. 383 (App.Div. 1986), A-3693-82T4, decided May 13, 1986. There the court held that when a defendant was incarcerated on one charge and was presumably represented by an attorney on that charge (at 388) he could nevertheless effectively waive counsel and give a statement on a second unrelated charge. Judge Dreier said resolution of the issue required a two-pronged analysis, first a determination of whether defendant was represented by counsel at the time of the interrogation and second whether adversary judicial proceedings had been instituted. There the first prong to invalidate the statement was satisfied but not the second as no proceedings had been instituted on the second charge. Thus, the defendant's statement was admissible. Here the reverse is true, and accordingly the result is the same. While defendant undoubtedly had the right to counsel when he made his statement he was not then represented in this case.
United States v. Callabrass, 458 F. Supp. 964 (S.D.N.Y. 1978),[2] cited in the remand order, is not inconsistent with our result. There the court held that post-indictment statements made to a Drug Enforcement Administration agent by two defendants should be suppressed. One defendant was in custody *374 and was given Miranda warnings before his statement but the court considered the warnings insufficient. The other defendant was not in custody and was not given Miranda warnings. While the judge gave various reasons for his conclusions we need go no further in discussing Callabrass than to point out that both defendants were, as the prosecution knew, represented by counsel when they gave their statements, though counsel were not present when the statements were given. Indeed, the statement of the defendant not in custody was taken in contravention of an agreement with his attorney that no statement would be taken when he voluntarily appeared at the drug enforcement headquarters to give a handwriting exemplar. Here defendant was not represented by counsel when he gave his statement. Thus the prosecutor can hardly be said to have interfered with the attorney-client relationship.
We recognize that various cases cited by defendant establish that there are more stringent standards for an effective waiver of the Sixth Amendment right to counsel than Miranda rights. See United States v. Mohabir, 624 F.2d 1140 (2 Cir.1980); Carvey v. LeFevre, 611 F.2d 19 (2 Cir.1979), cert. den. 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980); United States v. Satterfield, 558 F.2d 655 (2 Cir.1976); United States v. Massimo, 432 F.2d 324, 327 (2 Cir.1970) (dissenting opinion), cert. den. 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 633 (1971). But these cases are not controlling here as they involve the conventional pattern of the prosecutor or police instigating the questioning. Here it was defendant who by his letter sought out the officers. Indeed the cases cited by defendant tend to support the admission of his statement as they exclude volunteered statements from the Sixth Amendment protections. See United States v. Mohabir, supra, 624 F.2d at 1153; United States v. Massimo, supra, 432 F.2d at 327. We see little difference between a volunteered statement and a statement given at an interview initiated by a defendant.
The Supreme Court also directed our attention to the comment to RPC 3.8. Subsection (c) of that rule prohibits a *375 prosecutor from seeking "to obtain from an unrepresented accused a waiver of important post-indictment pretrial rights." The original comment to the rule published in 1983 indicates that it incorporates the provisions of Disciplinary Rule 7-103(A) and (B), applicable in New Jersey until the adoption of the Rules of Professional Conduct, effective September 10, 1984, see Note to R. 1:14, but "goes on to impose additional duties upon a criminal prosecutor."[3] A further comment to the rule prior to its adoption in 1984 cited United States v. Callabrass, supra, 458 F. Supp. at 964, and pointed out the distinction between waiver of a defendant's rights before and after indictment.[4]
We assume that the Supreme Court made reference to RPC 3.8 and the comments thereto for illustrative purposes of a prosecutor's possible duties to a defendant under the Sixth Amendment as the rule was not effective on January 16, 1980. But in any event we see no violation of RPC 3.8 as it was defendant who for his own reasons called for the meeting and obviously thought it advantageous to give his statement. Further, we see nothing in DR 7-103 in any way material to this case. We note that the parties have also referred to DR 7-104 as possibly germane to the proceedings. But the assistant prosecutor did not violate that rule for, insofar as it in any way is material here, it merely precludes an attorney from communicating in certain circumstances during the course of representing a client with a party he knows to be represented by an attorney. Defendant was unrepresented when he gave his statement.
*376 We also conclude that it does not follow that if a prosecutor violates an ethical rule in gathering evidence he necessarily violates a defendant's Sixth Amendment rights so that the evidence obtained is inadmissible. We do not see why ethical rules must be incorporated into the Sixth Amendment. Further, we point out that evidence given in violation of applicable disciplinary rules may be admissible. See Barbetta v. Sciaraffa, 135 N.J. Super. 488, 495 (App.Div. 1975). See also Suarez v. State, 481 So.2d 1201, 1205-1207 (Fla.Sup.Ct. 1986).
The conviction is again affirmed.[5]
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] There were further proceedings in Callabrass on different issues. See 469 F. Supp. 323 (S.D.N.Y. 1978), aff'd 607 F.2d 559 (2 Cir.1979), cert. den. 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980).
[3] The original comment to the rule was published in the Report of the Supreme Court Committee on the Model Rules of Professional Conduct included as a supplement to the New Jersey Law Journal of July 28, 1983.
[4] The 1984 comment to the rule was published as a supplement to the New Jersey Law Journal of July 19, 1984.
[5] It would by no means follow that even if the statement was improperly admitted the conviction would be reversed. Carvey v. LeFevre, supra, 611 F.2d at 22-23, held that the Sixth Amendment violation it found was harmless beyond a reasonable doubt and thus did not require a new trial. But we do not reach this issue as we are not required to do so and it has not been briefed.