247 N.J. Super. 314 (1991)
589 A.2d 180
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT
v.
CIBA-GEIGY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1991.
Decided April 10, 1991.
*315 Before Judges LONG, R.S. COHEN and STERN.
Frederick A.O. Schwarz, Jr., pro hac vice, Cravath, Swaine & Moore, argued the cause for appellant (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys).
*316 Mark Paul Cronin, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by STERN, J.A.D.
Our Rules of Professional Conduct, RPC 4.2 Communication with Person Represented by Counsel, provides:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
Based on this rule, defendant CIBA-GEIGY moved for a protective order prohibiting the State from initiating ex parte communications with defendant's employees. An indictment against defendant is now pending trial.
Before us, defendant argues that it seeks an order only with respect to "interrogation of CIBA-GEIGY employees whose acts or omissions the State sought to impute to CIBA-GEIGY for the purpose of establishing corporate criminal liability". The trial judge denied the motion concluding that the rule did not prohibit the Attorney General from conducting ex parte interviews of current or former employees of a corporate defendant, even though that corporation is represented by counsel. The court expressly ruled that those communications could include employees whose acts or omissions the State sought to impute to the defendant. We granted leave to appeal and accelerated oral argument.

I.
CIBA-GEIGY does not contest the general proposition under existing New Jersey law that evidence obtained in violation of a disciplinary rule need not be suppressed. See State v. Riley, 216 N.J. Super. 383, 390, 523 A.2d 1089 (App.Div. 1987); State v. Darby, 211 N.J. Super. 367, 376, 511 A.2d 1222 (App. *317 Div. 1986), certif. denied 105 N.J. 559, 523 A.2d 192 (1986);[1]State v. Porter, 210 N.J. Super. 383, 393-94, 510 A.2d 49 (App. Div. 1986), certif. denied 105 N.J. 556, 523 A.2d 191 (1986). Therefore, we question whether there is an issue for appropriate consideration in the criminal, as opposed to some future disciplinary, proceedings.[2] However, the State does not raise this procedural defense; it seeks to avoid any disciplinary wrongdoing, and defendant seeks to protect its interests. Further, no published opinion appears to decline consideration of the issue based on appropriate forum, the trial court ruled upon the merits of defendant's application in this case, and the parties are entitled to know their rights and responsibilities with respect to the immediate concern. The Advisory Committee on Professional Ethics would probably be required to decline consideration of the issue because it involves "a pending action where its opinion might affect the interests of the parties...." R. 1:19-2. Accordingly, there is a real dispute between the parties affecting a pending case, and we consider the issues raised.

II.
There is no doubt that RPC 4.2 applies to corporations. Nor is it limited to civil proceedings.[3] The real issue before us, *318 therefore, is whether any employees, and if so which employees, are "parties" for purposes of the rule.
Defendant essentially urges that the State wants to speak with employees who would not be "interviewed as witnesses but as corporate employees whose acts the State is trying inappropriately to impute to the corporation." According to the defendant, it "does not wish to `restrict the flow of information' available to the State, and [it] is willing to make available to the State any of its present or former employees who wish to be interviewed." In fact, a party cannot generally ask a witness "to refrain from voluntarily giving relevant information to another party," RPC 3.4(f). All that defendant requests (in addition to the witnesses' "right to accept or refuse to be interviewed", a right which is acknowledged by the State, see State v. Roszkowski, 129 N.J. Super. 315, 317-318, 323 A.2d 531 (App.Div. 1974), certif. denied 66 N.J. 325, 331 A.2d 25 (1974); State v. Boiardo, 172 N.J. Super. 528, 412 A.2d 1084 (Law Div. 1980); United States v. Addonizio, 313 F. Supp. 486, 491 (D.N.J. 1970), aff'd U.S. v. Addonizio, 451 F.2d 49 (3d Cir.N.J. 1971), cert. denied 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972)), is the right of defendant's counsel to be present at all such interviews. In defendant's words,
[t]his procedure will strike the proper balance between protecting the corporation's interests and allowing the State to conduct additional post indictment interviews. In thus promoting the interests of fairness, this procedure will not impose any unfair burden upon the State  it will be able to interview any CIBA-GEIGY employees who wish to be interviewed. This procedure also complies with the ethical rules while the State's insistence on ex parte procedures does not.
Our rule was patterned after the model A.B.A. rule, see American Bar Association Model Rules of Professional Conduct, and the commentary thereto notes that the rule prohibits ex parte contact "with persons having a managerial responsibility on behalf of the organization, and with any other person, whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability, or whose statement may constitute an admission on *319 the part of the organization." See, e.g., Public Service Electric & Gas Company v. Associated Electric & Gas Ins. Services, Ltd., 745 F. Supp. 1037, 1039-1042 (D.N.J. 1990) (quoting commentary). While the commentary is supportive of defendant's position, RPC 4.2 does not expressly distinguish between certain types or levels of officers or employees and others employed by a corporation.[4]
The defendant also relies upon Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). However, that case is distinguishable because it concerns the attorney-client privilege which was held applicable to communications of employees of a corporate party at all levels.[5] This case does not concern communications between a corporate employee and the corporation's counsel but with communications between a prosecutor, or attorney for the corporation's adversary, and a corporate employee who may or may not have previously communicated with counsel.
There is a distinction between the attorney-client privilege discussed in Upjohn, supra, and the protection afforded by RPC 4.2. See Wright by Wright v. Group Health Hospital, 103 Wash.2d 192, 691 P.2d 564 (1984). The Upjohn court expanded the definition of "client" for the purposes of the attorney-client privilege, but "[t]he purpose of the disciplinary rule, on the other hand, is to protect the corporation so its agents who have the authority to prejudice the entity's interest are not unethically influenced by adverse counsel." Id. 691 *320 P.2d at 570. Thus, Upjohn deals with the policy objections with respect to communications between a corporate employee and its counsel, a subject having little relationship with the purposes of the disciplinary rule:
First, the privilege applies only to confidential communications with counsel ..., it does not immunize the underlying factual information  which is in issue here  from disclosure to an adversary. .. . Second, the attorney-client privilege serves the societal objective of encouraging open communication between client and counsel ..., a benefit not present in denying informal access to factual information. Thus, a corporate employee who may be a `client' for purposes of the attorney-client privilege is not necessarily a `party' for the purposes of DR 7-104(A)(1) [the disciplinary rule]. Niesig v. Team I, 76 N.Y.2d 363, 371-372, 559 N.Y.S.2nd 493, 497 [558 N.E.2d 1030] (N.Y. 1990) (emphasis in original).
See also Stempler v. Speidell, 100 N.J. 368, 495 A.2d 857 (1985) (defendant could interview decedent's treating physician and plaintiff could be required to authorize same).[6]
Defendant acknowledges the right of the State to interview witnesses and to subpoena witnesses before the grand jury. It apparently acknowledges that employees can be called to testify before the grand jury, subject of course to their Fifth Amendment rights, although not before a prosecutor. See e.g. In re Addonizio, 53 N.J. 107, 116, 248 A.2d 531 (1968); State v. Hilltop Private Nursing Home, Inc., 177 N.J. Super. 377, 426 A.2d 1041 (App.Div. 1981); see also Matter of Nackson, 221 N.J. Super. 187, 205, 534 A.2d 65 (App.Div. 1987), aff'd 114 N.J. 527, 555 A.2d 1101 (1989). In distinguishing between pre-indictment and post-indictment situations, the defendant appears to acknowledge that the right to counsel attaches only after formal legal or adversarial proceedings are commenced, see e.g. Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Massiah v. *321 United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); State v. Earle, 60 N.J. 550, 552, 292 A.2d 2 (1972); State v. Darby, supra, 211 N.J. Super. at 372-376, 511 A.2d 1222.[7]See also R. 3:16; R. 7:4-4(a). At that time, the defendant becomes a "party." As noted in United States v. Ryans, 903 F.2d 731, 740-741 (10th Cir.1990), the commencement of formal proceedings and the shift "from the investigation to accusation" also shifts "the balance of interests at stake", thereby affecting the right to ex parte interviews once "adversary proceedings [have] begun."
As noted in a recent comment, Krulewitch, "Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest," 82 Northwestern Law Rev. 1274, 1275 (1988), under the prior disciplinary rule, DR 7-104(A)(1), the forerunner of RPC 4.2 (which contains substantially the same language):
An attorney cannot communicate with the individual who is the opposing party. If the case involves several different parties that are all individuals, .. . the application of the rule is sufficiently clear. When a corporation is a party to a suit, however, the term `party' suddenly becomes ambiguous. The rule fails to define the term `party' when applied to a corporate entity. Since a corporation is an artificial entity, it is often impossible to point to any one person or thing that represents the corporation. When the corporation becomes involved in a law suit, the corporate entity is the party, not the employees or the agents. The fundamental conundrum is this: if the corporation is a faceless entity run by agents and employees, and yet the agents and employees are not the corporation, then who or what is a `party' under DR 7-104(A)(1)? [footnotes omitted].
*322 There are a number of reasons for suggesting that the word "party" cannot include any employee of a corporate defendant. For example, a defendant employee of the corporate defendant could not be represented by the corporations's attorney in the action. See e.g., In re Garber, 95 N.J. 597, 472 A.2d 566 (1984); In re Abrams, 56 N.J. 271, 276, 266 A.2d 275 (1970); In re Russell, 59 N.J. 315, 282 A.2d 42 (1971). This is at least true in the absence of a knowing waiver post-indictment on the record by both parties. See R. 3:8-2; State v. Bellucci, 81 N.J. 531, 410 A.2d 666 (1980). "It is inherently wrong to represent both the employer and the employee if the employee's interest may, and the public interest will, be advanced by the employee's disclosure of his employer's criminal conduct." In re Abrams, supra, 56 N.J. at 276, 266 A.2d 275. Reading the rule to prohibit ex parte interviews might treat the employee as if represented by the corporation's attorney. Further, this approach, requiring notice to corporate counsel, would apply to corporate officers and employees, even if independently represented or an adverse party in the proceeding, such as in a stockholder's or worker's compensation case.
Our judicial policy is to promote the admission of evidence and, therefore, to construe privileges narrowly, see State v. Briley, 53 N.J. 498, 251 A.2d 442 (1969); see also In re Farber, 78 N.J. 259, 394 A.2d 330 (1978), cert. denied New York Times Co. v. N.J., 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); Kurdek v. West Orange Educ. Bd., 222 N.J. Super. 218, 226, 536 A.2d 332 (Law Div. 1987). Further, it may be difficult for the prosecutor to tell whether a corporate employee's statements can be imputed to the defendant before an initial interview occurs, and there is nothing to suggest that our disciplinary rule was designed to require ex parte or in camera hearings to obtain judicial permission or authorization for a pretrial interview.
Perhaps the simplest and, in many ways, the appropriate approach would be to hold that the word "party" means exactly *323 what it says, the corporate entity named as a party in the litigation. Cf. R. 4:16-1(c) relating to representatives of a corporate "party." This "plain language" construction is consistent with the wording of RPC 4.2, promotes the search for truth and avoids many of the problems caused by any other approach.
The "plain language" construction, and the other "bright line" extreme prohibiting all ex parte interviews of corporate employees, produce the benefit of avoiding the risk of a disciplinary rule violation and make it easier for an attorney to know when an interview can be conducted and when it cannot.
The "plain language" construction finds no support, however, in authority and is inconsistent with the purpose of the Rule as explained in the A.B.A. explanatory commentary. See n. 3 supra. See also Curley v. Cumberland Farms, Inc., 134 F.R.D. 77, 79 (D.N.J. 1991).
The other "bright line" extreme, prohibiting all ex parte interviews, has been endorsed in this federal district by Judge Politan in Public Service Electric & Gas Co., supra, 745 F. Supp. 1037, which prohibited all ex parte communications with a corporation's former employees. But, as noted in Magistrate Simandle's subsequent opinion adopted by Judge Brotman in Curley v. Cumberland Farms, Inc., 134 F.R.D. 77, 86 (D.N.J. 1991) the other cases which applied that approach to former employees were subsequently "vacated and withdrawn by the deciding courts, and are of no precedential value." These opinions dealing with former employees have limited value in this context because ex-employees can rarely, if ever, make an admission which can bind, or take action which can be imputed to, a former principal. See Curley, 134 F.R.D. at 88-91; Amarin Plastics, Inc. v. Maryland Cup Corp., 116 F.R.D. 36 (D.Mass. 1987). See also Evid.R. 63(8), 63(9). Compare, Fed. Rules Evid. Rule 801(d)(2)(D). Moreover, as the New York Court of Appeals recently noted in Niesig v. Team I, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 496, n. 3, 558 N.E.2d 1030, 1033 *324 n. 3 (N.Y. 1990), the only opinion which by then had adopted the "blanket rule" prohibiting ex parte interviews with all employees was "`depublished' by the California Supreme Court and thus is without precedential significance."[8] Further, as Magistrate Simandle has noted, "[i]f the framers of RPC 4.2 wished to ethically restrain all contact with a corporation's employees (let alone ex-employees), the rule would undoubtedly have been fashioned differently." 134 F.R.D. at 89.
In Curley, Judge Brotman adopted Magistrate Simandle's interpretation that RPC 4.2 applied to employees with management responsibility, or whose "act or omission is believed to be so central and obvious to a determination of corporate liability that the person's conduct may be imputed to the corporation," 134 F.R.D. at 91. or whose statements may constitute admissions against the organization which employs them. 134 F.R.D. at 91-92.
Last year in Niesig v. Team I, supra, the New York Court of Appeals found that the "blanket rule" prohibition test was too extreme. As Judge Kaye stated:
The single indisputable advantage of a blanket preclusion  as with every absolute rule  is that it is clear. No lawyer need ever risk disqualification or discipline because of uncertainty as to which employees are covered by the rule and which not. The problem, however, is that a ban of this nature exacts a high price in terms of other values, and is unnecessary to achieve the objectives of DR 7-104(A)(1) [the predecessor to R.P.C. 4.2 which contains substantially the same language]. [559 N.Y.S.2d at 497, 558 N.E.2d at 496].
However, the Court found that the "proposed intermediate tests ... give too little guidance, or otherwise seem unworkable." Id., 559 N.Y.S.2d at 498, 558 N.E.2d at 1035. For example, the "control group" test urged by the civil defendants in that case, which included "only the most senior management exercising substantial control over the corporation," id. at 497, 558 N.E.2d at 1034, was found to "overlook[] the fact that corporate employees other than senior management also can *325 bind the corporation." Id. at 498, 558 N.E.2d at 1035. The Court of Appeals therefore concluded:
The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines `party' to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's `alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally.
Unlike a blanket ban or a `control group' test, this solution is specifically targeted at the problem addressed by DR 7-104(A)(1). The potential unfair advantage of extracting concessions and admissions from those who will bind the corporation is negated when employees with `speaking authority' for the corporation, and employees who are so closely identified with the interests of the corporate party as to be indistinguishable from it, are deemed `parties' for purposes of DR 7-104(A)(1). Concern for the protection of the attorney-client privilege prompts us also to include in the definition of `party' the corporate employees responsible for actually effectuating the advice of counsel in the matter. [Id. at 498, 558 N.E.2d at 1035].
We are not the Supreme Court which can amend or clarify its rule, and we fully recognize that the broader we define the word "party", the more we narrow pretrial discovery of facts.[9] However, we know no better way than the New York Court of Appeals to balance the purpose of the Rule with the realities and practicalities of conducting litigation. That balance may at first, as in New York, be somewhat difficult to apply. It may even deter some ex parte communications, see Niesig, supra, 559 N.Y.S.2d at 499, 558 N.E.2d at 1036. If the Rule deters some ex parte civil discovery, there is no great social or policy sacrifice; it will promote other types of discovery, such as by deposition upon notice to the adversary. In the criminal setting, it may prevent some ability of the prosecutor to interview potential witnesses (who are employees of a corporate defendant) before trial, but the Rule only deals with a "party," that is after the commencement of an adversarial proceeding. Moreover, most criminal cases filed against a *326 corporation are commenced by complaint or indictment after investigation  corporations do not generally commit "street crimes"  and by then the investigation clearly should have been developed through the employee witnesses or otherwise. Accordingly, we find no reason to interpret RPC 4.2 more broadly than intended nor more narrowly than necessary to permit proper pretrial investigation. On balance, we give the Rule the same interpretation as rendered by the New York Court of Appeals in Niesig.
Remanded for further proceedings consistent with this opinion.
NOTES
[1] As stated by Judge Greenberg in Darby, supra, "... it does not follow that if a prosecutor violates an ethical rule in gathering evidence he necessarily violates a defendant's Sixth Amendment rights so that the evidence obtained is inadmissible. We do not see why ethical rules must be incorporated into the Sixth Amendment. Further, we point out that evidence given in violation of applicable disciplinary rules may be admissible." 211 N.J. Super. at 376, 511 A.2d 1222.
[2] Defendant makes an argument under the Sixth Amendment to the United States Constitution and N.J. Const. (1947), Art. I, par. 10, but contends that RPC 4.2 "is broader than the underlying constitutional guaranties."
[3] As will be developed hereafter, the commentary to the Model Rule expressly refers to imputation of criminal as well as civil liability.
[4] In adopting the New Jersey Rules of Professional Conduct, our Supreme Court did not adopt the A.B.A. commentary and, therefore, it should not be "considered as a formal part of the rules." The "introduction" to our Rules notes, however, that "reference should be made to the official ABA Comments" "[f]or assistance in interpreting these rules." See PRESSLER, Current N.J. COURT RULES, (Gann 1991), Introduction to Rules of Professional Conduct at 286.
[5] The decision does not appear to rest on constitutional grounds, but it is clear that New Jersey enjoys an attorney-client privilege. See e.g. Matter of Nackson, 114 N.J. 527, 531-532, 555 A.2d 1101 (1989).
[6] Stempler v. Speidell did not involve a corporate employee.
[7] See also Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (statements from accused outside the presence of counsel not admissible), reh'g denied 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977); State v. Clausell, 121 N.J. 298, 580 A.2d 221 (1990). Once the adversarial criminal process has begun the State may not take a statement from a defendant in the absence of counsel or a waiver. State v. Hartley, 103 N.J. 252, 284-286, 511 A.2d 80 (1986). State v. Kennedy, 97 N.J. 278, 478 A.2d 723 (1984). The cases dealing with waiver after assignment of counsel do not definitively consider RPC 4.2 or RPC 4.3. See State v. Porter, supra. But see State v. Darby, supra; RPC 3.8.
[8] That opinion was not one cited by Magistrate Simandle. Niesig was decided about two months prior to P.S.E. & G.
[9] Our Rules have express provisions relating to depositions of corporations through designated officers, directors or managing agents. See R. 4:14-2(c); 4:16-1(b).