Dolores AMATUZIO, et al., Plaintiffs,

v.

GANDALF SYSTEMS CORPORATION, Gandalf Technologies, Inc., and Infotron Systems Corporation, Defendants.

William F. CHAMBERS, et al., Plaintiffs,

v.

GANDALF SYSTEMS CORPORATION, Gandalf Technologies, Inc. and Infotron Systems Corporation, Defendants.

Civil Action Nos. 95–4808, 96–0621.

United States District Court, D. New Jersey.

July 5, 1996.

Joseph F. Bouvier, Dante Mattioni, Mattioni, Mattioni & Mattioni, Westmont, NJ, for Plaintiffs.

James M. Penny, Jr., Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for Defendants.

OPINION

IRENAS, District Judge:

I

Defendants move to disqualify plaintiffs' counsel, Mattioni, Mattioni & Mattioni ("Mattioni"), on the ground that one plaintiff, Vincent Messina ("Messina"), has disclosed to Mattioni confidential communications between the defendants and their attorney. Defendants further allege that this disclosure violated the rules of ethics and the attorney-client privilege. Because we hold that plaintiffs' counsel breached no rule of ethics or duty of confidentiality, the motion to disqualify will be denied.

█ We note at the outset that the attorney-client privilege is a rule of evidence more than a rule of ethics, and we are not now being asked to rule on the admissibility of a particular confidential communication. Nevertheless, when an attorney learns of communications between the adverse party and the adverse party's attorneys—communications which might be protected by the attorney-client privilege—it is proper to consider whether there has been a violation of RPC 4.2 or RPC 4.4.[1] RPC 4.2 forbids an attorney from communicating directly with a party whom he knows to be represented by counsel, while RPC 4.4 enjoins attorneys from using "methods of obtaining evidence that violate the legal rights" of third parties.[2]

█ A finding that an attorney has violated a particular ethical rule does not automatically require disqualification. The court's first concern is the integrity of the litigation process, not the disciplining of attorneys. However, because the right of a client to communicate confidentially with his attorney goes to the very core of the litigation process, the court can disqualify an attorney if necessary to protect this fundamental value.

II

The plaintiffs are former employees in the Cherry Hill, New Jersey, office of defendant Gandalf Systems Corporation ("GSC"). They claim that their termination violated the WARN Act, 29 U.S.C. § 2101 *et seq.*, and that severance benefits under a long-existing plan were reduced in violation of ERISA, 29 U.S.C. § 1001 *et seq.*, or applicable state law. One of the plaintiffs is Messina, who was GSC's Director of Human Resources.

In early January of 1994 GSC began planning a major reduction of personnel in its Cherry Hill office. As part of the planning process GSC also considered what severance would have to be paid to terminated employees. Specifically, there was to be an evaluation of whether GSC could decrease the severance benefits provided for in a plan used years earlier by GSC's predecessor corporation, Infotron Systems Corporation ("Infotron"). The person charged with downsizing was Jeffrey Singer ("Singer"), the Director of Human Resources for GSC's parent, Gandalf Technologies, Inc. ("GTI"). Messina reported to Singer, who would be making the final recommendation to the board of directors. GSC also sought legal advice and retained for this purpose Obermayer Rebman Maxwell and Hippel ("Obermayer"). James Penny, Jr. ("Penny") was one of the Obermayer lawyers who worked on the case.

On January 7, 1994, a meeting was held to discuss and consider the legal ramifications of the proposed layoffs and a possible reduction in severance benefits. Messina, Singer and Penny were present. While the record does not reflect everything that was said at that meeting, it seems clear that Messina was present primarily to provide information to Singer and Penny, particularly as to the existence and terms of the Infotron severance plan and whether it had been adopted

---

1. The New Jersey Rules of Professional Responsibility will be referred to with the designation "RPC." Although this litigation is in the Federal Courts, the Rules of Professional Conduct adopted by the Supreme Court of New Jersey apply in accordance with General Rule 6A of the local court rules adopted in the District of New Jersey.

2. As a non-lawyer Mr. Messina is not subject to the Rules of Professional Conduct, and his disclosure would violate no ethical rule. Rather, the issue is whether plaintiffs' attorneys should have taken steps to prevent such disclosure in the first instance. During oral argument defense counsel suggested that RPC 4.4 and not RPC 4.2 was the rule violated by plaintiffs' counsel.

by GSC. In his deposition Singer testified that at the meeting of January 7 he reached an understanding that GSC had, in fact, been following the Infotron severance plan. Deposition of March 19, 1996, p. 30, lines 15–22. Defendants also contend that subsequent to January 7 Messina participated in other conversations with counsel and received copies of written communications to and from Obermayer.

Messina was not the corporate officer charged with making the decision as to whether to close the Cherry Hill office, whether to make a reduction in force, how large a particular layoff would be, the timing of the layoffs or the reduction in severance pay. He may have provided factual and historical input, but Singer and his superiors made the final decisions. Indeed, Messina lost his job when the office closed, and received reduced severance as a result of GSC's amendment of the Infotron severance plan. Even with respect to the first round of terminations made in the middle of January it was Singer and his superiors who made the final decision, although Messina may have selected the particular individuals to be let go. Deposition of March 19, 1996, p. 16, lines 11–23.

The defendants have not challenged the following description of the manner in which Messina became a plaintiff in the already pending suit against defendants:

> During discovery in the initial litigation, the Mattioni firm spoke with Mr. Messina by telephone when attempting to coordinate a convenient date to take his deposition. During these telephone calls, the Mattioni firm did not discuss with Mr. Messina any aspects of the facts of this case or the underlying dispute. After several unsuccessful attempts to establish and confirm a deposition date, plaintiffs notice the deposition of Mr. Messina and served him of March 15, 1996, with a subpoena directing him to appear for deposition on March 19, 1996, at the Mattioni firm's Philadelphia office.
>
> On the evening of March 18, 1996, Vincent Messina called the Mattioni firm and said he wished to be a plaintiff in the action and wanted the Mattioni firm to represent him. The Mattioni firm agreed to such representation.

Plaintiffs' Brief in Opposition to Disqualification, pp. 4–5.

Although plaintiffs' briefs challenge whether Messina has disclosed any confidential information to Mattioni, for purposes of this motion we are assuming that (i) Messina has revealed to Mattioni the contents of any oral or written communications with Obermayer to which he was privy, and (ii) communications between Obermayer and officers of GSC or GTI would be protected in the ordinary course by the attorney-client privilege.

### III

At the outset we note that, because motions to disqualify are often brought for tactical reasons, they should be viewed with caution. In this case, which will resolve primarily legal rather than factual disputes, it is hard to see how disclosure of what occurred at that meeting would really hurt the defendants. It is also clear that forcing plaintiffs to change counsel at this point would work a significant hardship on both plaintiffs and Mattioni. We also observe that the problem raised in this case will not go away even if Mattioni does, since there will always remain the question of Messina's right to disclose to any attorney he might hire the contents of the communications now claimed to be privileged. The issue, then, is whether it would violate a rule of ethics or duty of confidentiality for Mattioni to receive such disclosures.

### IV

██ A client's right to maintain the confidentiality of communications to his attorney is not absolute. RPC 1.6, for example, contains a variety of exceptions. The attorney-client privilege is strictly and narrowly construed for the quite obvious reason that it has the potential to frustrate the court's truth-seeking function. When the attorney-client privilege conflicts with the rights or privileges of others, a court must at times find that the attorney-client privilege gives way to other considerations. The crime/fraud exception is one notable example. *See,*

*e.g., United Jersey Bank v. Wolosoff,* 196 N.J.Super. 553, 483 A.2d 821 (App.Div.1984).

■ While there is no doubt that a corporation is a "client" for purposes of invoking the attorney-client privilege, there are nevertheless problems which are not present when the client is flesh and blood rather than a piece of paper filed with the secretary of state. These problems arise in part because there may be thousands of individuals who are alleged to be the "client"—e.g., stockholders, directors, officers, employees, and non-employee agents. Moreover, some of these individuals may themselves be bitterly adverse in a particular factual setting. Stockholders sometimes sue the corporation and its directors, and employees may sue their employers, officers, directors or even co-employees.

■ In some situations every employee can be the client for purposes of confidential communication with an attorney. For instance, if someone from the outside world sues a corporation, conversations between the corporate attorney and almost any employee for the purpose of getting information necessary to defend the action may enjoy the attorney-client privilege and be immune from disclosure to the adversary. This is one of the teachings of *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

The usual battle is fought under RPC 4.2 when an attorney wants to have *ex parte* communications with employees of an adverse party. *See, e.g., New Jersey Supreme Court Advisory Committee on Professional Ethics Opinion No. 668,* 134 N.J. 294, 633 A.2d 959 (1993); *In re The Prudential Insurance Company of America Sales Practices Litigation,* 911 F.Supp. 148 (D.N.J.1995); *State v. CIBA–GEIGY Corp.,* 247 N.J.Super. 314, 589 A.2d 180 (Law Div.1991), appeal granted, 126 N.J. 338, 598 A.2d 895 (1991), appeal dismissed, 130 N.J. 585, 617 A.2d 1213 (1992); *Goff v. Wheaton,* 145 F.R.D. 351 (D.N.J.1992). Plaintiff does not disagree that, so long as Messina was not a named plaintiff, *ex parte* contact with him would have been, at least potentially, a problem under RPC 4.2. Indeed, Mattioni originally planned to deal with Messina solely through a noticed deposition, an entirely proper way to proceed. Our case involves a different issue: to what extent can a former employee reveal to his own attorney, in connection with pending litigation between that employee and his former corporate employer, confidential communications with the employer's corporate attorney which occurred while the former employee was still employed?

Where the client seeking to maintain the veil of secrecy is other than an individual acting in his own right, the law has recognized certain exceptions to the duty of confidentiality. These exceptions generally arise where the putative client owes a duty, particularly a fiduciary duty, to the adverse party seeking disclosure. Thus, a beneficiary of a trust may be able to force disclosures of communications between the trustee and his attorney on matters relating to the administration of the trust. Obviously the trustee owes a strong duty to the beneficiary, and the attorney-client privilege should not be used as a shield when the performance of that duty is called into question. *See* Restatement (Third) of the Law Governing Lawyers § 134A (Proposed Final Draft no. 1, March 29, 1996) ("1996 Restatement Draft").

Similarly, a suit between "shareholders, members or other constituents" and the corporation may result in the inapplicability of the attorney-client privilege. *See* § 134B of 1996 Restatement Draft. This section was designed primarily to cover "suits by shareholders and similar beneficial owners of private organizations". Comment a. to § 134B. This section proceeds by analogy from the trustee exception and follows the leading case of *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). While it may be unclear if and when the duty of an employer to its employee might be described as fiduciary in nature, the logic of § 134B might apply by analogy to a dispute between an employer and employee over duties imposed on the employer by legislation, such as the WARN Act or ERISA, or common law.

One law review article has noted that:

It is a settled rule that the privilege does not apply, *inter sese,* when two or more persons, having shared a single attorney on a matter of common interest, subsequently have a falling out with respect to the subject matter of the consultation. The *inter sese* rule, as I shall term it, should be distinguished from waiver by one of the joint clients, which results in a loss of the privilege in suits brought by outsiders, as well as between the parties.

David Simon, "The Attorney–Client Privilege As Applied To Corporations," 65 *The Yale Law Journal* 953, 986–987 (1956). Although plaintiff suggests that the *inter sese* rule might apply in this case, the rule does not fit squarely because Messina and Gandalf are not perceived by the defendant as two different clients, at least at the time the communications in question were made, but rather as one and the same client.[3] However, this rule does suggest that in determining the applicability of the attorney-client privilege *vel non* the court should consider whether an employer enjoyed an expectation of privacy with respect to a particular employee at the time the disclosure was made.

## V

Recognizing that an employer has many legal obligations to its employees, that an employer and an employee are always potential adversaries in disputes concerning these obligations and that this potential adversity often erupts into actual disputes or litigation, the court find that existing ethics rules do not squarely address the level of communication permitted between the now adverse employee and his attorney where the employee has previously become aware of communications between the employer and counsel.

■ The court holds that communications with a corporation's attorney made by, to, or in the presence of a non-attorney employee who later becomes adverse to the corporation are not protected by RPC 4.2, RPC 4.4 or the attorney-client privilege from disclosure

by the former employee to his litigation counsel if (i) the litigation involves an allegation by the employee that the corporation breached a statutory or common law duty which it owed to the employee, (ii) the communication disclosed involves or relates to the subject matter of the litigation, and (iii) the employee was not responsible for managing the litigation or making the corporate decision which led to the litigation. We also see no reason why a similar rule would not apply with respect to disputes that have not yet resulted in litigation.

This rule balances the right of a corporation to seek legal advice in confidence against the right of employees to vindicate their legal rights against the corporation. However, if the employee involved is a corporate attorney acting in his capacity as such this holding might be inapplicable. Such an attorney would be bound by the Rules of Professional Responsibility, and the RPCs might dictate a different result in particular factual settings.

Defendants knew that everyone in Cherry Hill, including Messina, was potentially subject to an adverse employment decision. It was for this very reason that the parent company, GTI, sent its own officer to New Jersey to supervise the downsizing. While Gandalf certainly had a strong expectation of privacy in the conversations between Singer and Penny, that expectation can hardly have been as strong when Messina, a potential target of the adverse action, was in the room. Even if there was some expectation, the strong public policy embodied in laws which protect employees must trump the need for confidentiality.

Messina is neither a lawyer nor the person responsible for making the corporate decisions which led to the elimination of the Cherry Hill office. To burden his ability to communicate with his attorney by subjecting his knowledge to scrutiny under the attorney-client privilege would certainly impair his ability to cooperate with counsel in pursuing his case, would be time consuming and

---

**3.** In one sense defendants seek to treat Messina as both client and adversary. For purposes of this lawsuit he is clearly the enemy; for purposes of applying the attorney-client privilege defendant seeks to make him Gandalf, for if Messina were not the equivalent of Gandalf when the communications were made, revealing the communications to a non-client third party would waive the attorney-client privilege. *Cf. Upjohn.*

would create traps which could easily be exploited by the defense.

■ There is nothing in this court's holding which would make it difficult for a corporation to maintain the confidentiality it needs to mount an adequate legal defense in suits brought by former employees. Messina appears to have been needed by defendants solely for the purpose of gathering factual information, and it would have been no burden to have excluded him from any conversation with the company's attorney in which corporate policy or legal strategy were being discussed. When a corporation chooses to make a potential target of an adverse employment action privy to communications with its lawyer, the corporation has no right to expect that those communications will be kept secret if the employee should sue the corporation regarding the legality of that adverse action.

■ We emphasize that nothing in this opinion should be construed as ruling that defendants have waived the attorney-client privilege as to any particular communication or that the attorney-client privilege will not apply to communications revealed by Messina to Mattioni. We are simply holding that Mattioni has not violated either RPC 4.2 or RPC 4.4 by debriefing Messina as to the meeting of January 7, 1994, or as to other communications to or from Obermayer to which Messina may have been privy.

Even if we are wrong in concluding that there was no ethical violation in Mattioni's debriefing of Messina, we still would not disqualify Mattioni as plaintiffs' counsel. Such a disqualification would clearly work a hardship on the plaintiffs, and there has been no showing that in the context of this case the contested disclosures have harmed defendants' ability to defend the case.

Defendants' application to disqualify plaintiffs' counsel is denied. An appropriate order in conformance with this opinion will be entered by the court.